622889

[barcode]

STATE BAR OF WISCONSIN FORM 1 - 1998

**WARRANTY DEED**

Document Number

Recorded
NOV. 15, 2004 AT 10:14AM
CONNIE J WOOLEVER
REGISTER OF DEEDS
WALWORTH COUNTY, WI
Fee Amount:    $11.00
Transfer Fee:    $501.00

**This Deed**, made between Steven W. Saunders, a single person Grantor, and Jeffrey L. Neiger, a single person Grantee.

Grantor, for a valuable consideration, conveys and warrants to Grantee the following described real estate in Walworth County, State of Wisconsin (the "Property"):

Lot 10, Block 14, Inlet Oaks Subdivision No. 5, located in the Southeast ¼ of Section 15, T2N, R16E, Town of Delavan, Walworth County, Wisconsin.

The following is for informational purposes only:
Address:528 Valencia Dr.
Tax Key No: FIN5 00048

Recording Area

LANDMARK TITLE 11.00

Name and Return Address
LTW-009678

FIN5 00048
Parcel Identification Number (PIN)

This is _____ homestead property.
(is) (is not)



Together with all appurtenant rights, title and interests.

Grantor warrants that the title to the Property is good, indefeasible in fee simple and free and clear of encumbrances except municipal and zoning ordinances and agreements entered under them, recorded easements for the distribution of utility and municipal services, recorded building and use restrictions and covenants, general taxes levied in the year of closing.

Dated this 12 day of November, 2004.

\* Steven W. Saunders

\* Steven W. Saunders

**AUTHENTICATION**

Signature(s) _____

authenticated this 12 day of November, 2004

\* _____

TITLE: MEMBER STATE BAR OF WISCONSIN
(If not,
authorized by §706.06, Wis. Stats.)

THIS INSTRUMENT WAS DRAFTED BY
Attorney Michael T. Meurer   Elkhorn, WI 53121
State Bar No. 01000965

(Signatures may be authenticated or acknowledged. Both are not necessary.)

**ACKNOWLEDGMENT**

STATE OF Wisconsin        )
                                                  ) ss.
Walworth        County    )

Personally came before me this 12 day of
November, 2004 the above named
Steven W. Saunders

to me known to be the person(s) who executed the foregoing
instrument and acknowledged the same.

Yvonne M Johnson

Notary Public, State of Wisconsin
My Commission is permanent. (If not, state expiration date:
01/01/06 .)

[Notary seal: YVONNE M. JOHNSON NOTARY PUBLIC OF WISCONSIN]

\* Names of persons signing in any capacity must be typed or printed below their signature.

STATE OF WISCONSIN
FORM No. 1 - 1998

Information Professionals Co., Fond du Lac, WI

WARRANTY DEED

800-655-2021

# MORTGAGE

622890

NAME & RETURN ADDRESS
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

PARCEL IDENTIFIER NUMBER
FIN5 00048

Recorded
NOV. 15, 2004 AT 10:14AM
CONNIE J WOOLEVER
REGISTER OF DEEDS
WALWORTH COUNTY, WI
Fee Amount: $31.00

---

[Space Above This Line For Recording Data]

LANDMARK TITLE 31.00
0008393841311004
[Doc ID 1]

MIN 1000157-0004315574-2

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  NOVEMBER 12, 2004   , together with all Riders to this document.
(B) "Borrower" is
JEFFREY L NEIGER

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of  NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
(E) "Note" means the promissory note signed by Borrower and dated  NOVEMBER 12, 2004   . The Note states that Borrower owes Lender
ONE HUNDRED THIRTY THREE THOUSAND SIX HUNDRED and 00/100

Dollars (U.S. $ 133,600.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  DECEMBER 01, 2034   .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

WISCONSIN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 11

Initials: ____

-6A(WI) (0005).01   CHL (11/01)(d)   VMP MORTGAGE FORMS - (800)521-7291
CONV/VA

Form 3050 1/01

*23991*

*08393841300002006A*



622890

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
☐ Balloon Rider     ☐ Planned Unit Development Rider     ☐ 1-4 Family Rider
☐ VA Rider     ☐ Biweekly Payment Rider     ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY     of     WALWORTH     :
[Type of Recording Jurisdiction]     [Name of Recording Jurisdiction]

Lot 10, Block 14, Inlet Oaks Subdivision No. 5, located in the Southeast 1/4 of Section 16, T2N, R16E, Town of Delavan, Walworth County, Wisconsin.

which currently has the address of

528 VALENCIA DR, DELAVAN
[Street/City]

Wisconsin     53115     ("Property Address"):
[Zip Code]

Initials: _____

Case 13-02937-pp     Doc 4-1     Filed 01/21/14     Page 3 of 38

622890

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Accelerated Redemption Periods. If the Property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church, or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

25. Attorneys' Fees. If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _Jeffrey L. Neigs_____ (Seal)
                                          JEFFREY L. NEIGS              -Borrower

_____          _____ (Seal)
                                                                       -Borrower

                                          _____ (Seal)
                                                                       -Borrower

                                          _____ (Seal)
                                                                       -Borrower

622890

STATE OF WISCONSIN, Walworth
The foregoing instrument was acknowledged before me this 11/12/04

DOC ID #: 0008393841311004
County ss:

by Jeffrey L. Nieger

My Commission Expires: 01/01/06

Yvonne M Johnson
Notary Public, State of Wisconsin

This instrument was prepared by
PATTI L. KNEPPER
COUNTRYWIDE HOME LOANS, INC.
1524 SOUTH 108TH STREET, WEST ALLIS, WI 53214-4019



YVONNE M JOHNSON
NOTARY
PUBLIC
STATE OF WISCONSIN

-6A(WI)(0005).01  CHL (11/01)     Page 11 of 11

Initials:_____
Form 3050 1/01

# MORTGAGE

DOCUMENT NUMBER

Recorded
NOV. 15, 2004 AT 10:14AM
CONNIE J WOOLEVER
REGISTER OF DEEDS
WALWORTH COUNTY, WI
Fee Amount: $19.00

NAME & RETURN ADDRESS
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

PARCEL IDENTIFIER NUMBER
F1N500040

LANDMARK TITLE 19.00

———————————————— [Space Above This Line For Recording Data] ————————————————

0008393842111004
[Doc ID #]

MIN 1001337-0000299540-8

THIS MORTGAGE, dated NOVEMBER 12, 2004 , is between
JEFFREY L NEIGER

residing at
141 N WATERTOWN ST, JOHNSON CREEK, WI 53038-9673
the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we," "our," or "us"
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") a Delaware corporation,
with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. MERS is the "Mortgagee"
under this Mortgage and is acting solely as nominee for
COUNTRYWIDE HOME LOANS, INC.
("Lender" or "you") and its successors and assigns.

   MORTGAGED PREMISES: In consideration of the loan hereinafter described, we hereby mortgage,
grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the
successors and assigns of MERS, the premises located at:
                    528 VALENCIA DR, DELAVAN
                          Street, Municipality
           WALWORTH               Wisconsin     53115     (the "Premises").
              County                            ZIP
and further described at:
Lot 10, Block 14, Inlet Oaks Subdivision No. 5, located in the Southeast
1/4 of Section 16, T2N, R16E, Town of Delavan, Walworth County,
Wisconsin.

* MERS HELOC - WI Mortgage
2E035-WI (02/04)(d)

Page 1 of 5

Initials: 





EXHIBIT
C

**622891**

The Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto.

WE UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

LOAN: This Mortgage will secure your loan to us in the principal amount of $ 25,050.00     or so much thereof as may be advanced and readvanced from time to time to
JEFFREY L. NEIGER

the Borrower(s) under the Home Equity Credit Line Agreement and Disclosure Statement (the "Note") dated NOVEMBER 12, 2004     , plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Mortgage will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Mortgage entitled 'Our Authority To You.' Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

OUR IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Mortgage, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Mortgage.

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

DOC ID #: 0008393842111004

(f)  OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Mortgage, you may, if you choose, perform our obligations and pay such costs and expenses, after you give us written notice and a 10 day period in which to perform. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Mortgage secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that you obtain to cover loss or damage to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Mortgages.

(g)  PRIOR MORTGAGE: If the provisions of this paragraph are completed, this Mortgage is subject and subordinate to a prior mortgage dated                          and given by us to

as mortgagee, in the original amount of $ 0 . 00                    (the "Prior Mortgage"). We shall not increase, amend or modify the Prior Mortgage without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Mortgage promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Mortgage as and when required under the Prior Mortgage.

(h)  HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and applicable laws of any jurisdiction where the Premises are located or otherwise covering the Premises, that relate to health, safety or environmental protection.

(i)  SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(j)  INSPECTION: We will permit you to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Note and this Mortgage may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Mortgage without losing your rights in the Premises.

DEFAULT: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, you may foreclose upon this Mortgage. This means that you may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe on the Note and under this Mortgage. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. In addition, you may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before a default, after entry of a judgment and foreclosure; provided that after entry of a judgment the interest rate shall not exceed the interest rate allowed by then applicable law. In addition, you shall be entitled to collect all reasonable fees and costs actually incurred by you in proceeding to foreclosure, including, but not limited to, costs of documentary evidence, abstracts and title reports. We agree to the provisions of Section 846.101 of the Wisconsin Statutes, or any successor provision, permitting you, at your option when waiving the right to judgment for deficiency, to hold a foreclosure sale of real estate 6 months after a foreclosure judgment is entered.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

DOC ID #: 0008393842111004

This assignment is intended to vest in you the present and absolute right, title and interest in and to any leases and rents of the Premises. However, unless and until a condition or event under Paragraph 12.A. of the Note occurs, we may continue to function as lessor under any leases and to collect all rents; provided, however, that from and after:

   (i)   The occurrence of an event or condition under Paragraph 12.A. of the Note; and

   (ii)   delivery of a written notice to us from you invoking your right to function as lessor under all leases and to collect the rents to our exclusion (the "Declaration");

constructive possession of the Premises will be vested in you. The Declaration shall be effective immediately upon its deposit in the United States mail. The sending of such Declaration shall not be considered the exclusive requisite action relating to the activation of this assignment by you. Each of the following shall also be considered a discernible event, in addition to the Declaration, which shall serve to activate this assignment:

   (a)   the taking of possession of the Premises by you;

   (b)   the filing of a motion for the appointment of a receiver and/or the appointment of a receiver for the Premises; or

   (c)   the commencement of an action to foreclose the Mortgage.

After the delivery of the Declaration or any one of the other foregoing events of activation occurs, we shall have no further right to function as lessor under any of the leases or to collect rents and immediately shall turn over to you all prepaid rents accruing on and after the date on which such notice is delivered to us. The rent shall be paid directly to you. You may notify the tenants under the leases or any other parties in possession of the Premises to pay the rents directly to you at the address specified for notices to you. We hereby irrevocably appoint you our true and lawful attorney-in-fact for all of the purposes set forth herein.

BINDING EFFECT: Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Note has been paid in full and your obligation to make further advances under the Note has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Mortgage, and provided any obligation to make further advances under the Note has terminated, this Mortgage and your rights in the Premises shall end.

NOTICE: Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Mortgage shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at
For MERS:
P.O. Box 2026, Flint, MI 48501-2026
For Lender:
4500 Park Granada, Calabasas, CA 91302-1613
or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

RELEASE: Upon payment of all sums secured by this Mortgage and provided your obligation to make further advances under the Note has terminated, you shall discharge this Mortgage without charge to us, except that we shall pay any fees for recording of a satisfaction of this Mortgage.

GENERAL: You can waive or delay enforcing any of your rights under this Mortgage without losing them. Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.

622891

DOC ID #: 0008393842111004

THIS MORTGAGE has been signed by each of us under seal on the date first above written.

WITNESS:

_____

_____

_____

_____

_____ (SEAL)
Mortgagor: JEFFREY L. WEIGER

_____ (SEAL)
Mortgagor:

_____ (SEAL)
Mortgagor:

_____ (SEAL)
Mortgagor:

STATE OF WISCONSIN, _____Walworth_____ County ss:
The foregoing instrument was acknowledged before me this  11 / 12 / 04
                                                                    [date]

by ___Jeffrey L. Weiger_____
              (person acknowledging)

My Commission Expires: ___01/01/06____   _Yvonne M Johnson_
                                          Notary Public, State of Wisconsin

This instrument was prepared by PATTI L. KNEPPER

(Seal)

● MERS HELOC - WI Mortgage
2E835-WI (02/04)                    Page 5 of 5

## SATISFACTION OF MORTGAGE

682475

KNOW ALL MEN BY THESE PRESENTS: Mortgage Electronic Registration Systems, Inc., the owner of and holder of a certain mortgage deed executed by
JEFFREY L NEIGER

to Mortgage Electronic Registration Systems, Inc. bearing date 11/12/2004, recorded in Official Records Book N/A, page N/A, Document # 622891, in the office of the Register of Deeds Court of WALWORTH County, State of Wisconsin, securing a certain note in the principal sum of $25,050.00 Dollars, and certain promises and obligations set forth in said mortgage deed, upon the property situated in said State and County described as follows, to-wit:

Recorded
JULY 17, 2006 AT 10:16AM
CONNIE J WOOLEVER
REGISTER OF DEEDS
WALWORTH COUNTY, WI
Fee Amount: $11.00

Mail Recorded Satisfaction To:
JEFFREY L NEIGER
528 Valencia Dr
Delavan, WI 53115

Tax ID: 087-018

Lot 10, Block 14, Inlet Oaks Subdivision No. 5, located in the Southeast 1/4 of Section 16, T2N, R16E, Town of Delavan, Walworth County, Wisconsin.

hereby acknowledges full payment and satisfaction of said note and mortgage deed, and surrenders the same as canceled, and hereby directs the Clerk of the said Circuit Court to cancel the same of record.

IN WITNESS WHEREOF the said corporation has caused these presents to be executed in its name, by its proper officers thereunto duly authorized, the 06 day of July, 2006.

Mortgage Electronic Registration Systems, Inc.

By
Peter Lopez
Assistant Secretary

Signed and delivered in the presence of:

STATE OF ARIZONA
COUNTY OF MARICOPA

On 07/06/2006, before me, Ronald McCain, Notary Public, personally appeared Peter Lopez, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Ronald McCain, NOTARY PUBLIC
My commission expires 01/16/2009

OFFICIAL SEAL
RONALD McCAIN
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Comm. Expires Jan. 16, 2009

Document Prepared By:
Steve V. Galiano
ReconTrust Company, N.A.
1330 W. Southern Ave.
MS: TPSA-88
Tempe, AZ 85282-4545
(800) 540-2684
DOCID#000839384212005N

**EXHIBIT D**

694024

## MORTGAGE

DOCUMENT NUMBER:

Recorded
NOV. 17, 2006 AT 03:52PM
CONNIE J WOOLEVER
REGISTER OF DEEDS
WALWORTH COUNTY, WI
Fee Amount:    $29.00

NAME & RETURN ADDRESS:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423   29.00

PARCEL IDENTIFIER NUMBER:

——————————— [Space Above This Line For Recording Data] ———————————

061327                                    00015203654311006
[Escrow/Closing #]                              [Doc ID #]

MIN 1001337-0001811035-9

THIS MORTGAGE is made this 9th                    day of NOVEMBER, 2006  , between the Mortgagor,
JEFFERY NEIGER

(herein "Borrower"), and the Mortgagee, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for
Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
Countrywide Bank, N.A.
A NATL. ASSN.                                                            , ("Lender") is organized
and existing under the laws of THE UNITED STATES                     , and has an address of
1199 North Fairfax St. Ste.500, Alexandria, VA 22314                                          .
    WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $30,000.00           , which
indebtedness is evidenced by Borrower's note dated NOVEMBER 09, 2006     and extensions and renewals
thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness,
if not sooner paid, due and payable on  DECEMBER 01, 2021  ;
    TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of
all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the
performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and
convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of

WISCONSIN - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

Form 3850
Amended 2/801

 -76N(WI) (0305).03    CHL (05/06)(d)      Page 1 of 7
                                              VMP Mortgage Solutions, Inc.



* 2 3 9 9 1 *          * 1 5 2 0 3 6 5 4 3 0 0 0 0 0 1 0 7 6 N *

061327



EXHIBIT
E

MERS, with power of sale, the following described property located in the County of WALWORTH , State of Wisconsin:

LOT 10, BLOCK 14, INLET OAKS SUBDIVISION NO. 5, LOCATED IN THE SOUTHEAST 1/4 OF SECTION 15, TOWNSHIP 2 NORTH, RANGE 16 EAST, TOWN OF DELAVAN, WALWORTH COUNTY, WISCONSIN.

which has the address of

528 VALENCIA DR, DELAVAN , Wisconsin
[Street, City]

53115-3036 (Zip Code] (herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Mortgage.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any

694024

DOC ID #: 00015203654311006

Property may be three (3) months from the date the Judgment is entered. In any event, if the Property has been abandoned, then the sale of the Property may be two (2) months from the date the judgment is entered.

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

NOTICE TO CUSTOMER

(a)  DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON ALL PAGES, EVEN IF OTHERWISE
     ADVISED.
(b)  DO NOT SIGN IF IT CONTAINS ANY BLANK SPACES.
(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE
     UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE
     FINANCE CHARGE.

_____
JEFFERY WEIGER                                          -Borrower

_____
Sue Weiger                                             -Borrower

_____
                                                       -Borrower

_____
                                                       -Borrower

[Sign Original Only]

-76N(WI) (0006).02    CHL (05/08)                Page 6 of 7                     Form 3850

694024

STATE OF WISCONSIN,                                                    DOC ID #: 00015203654311006

The foregoing instrument was acknowledged before me this _____11-9-0 6_____ County ss:_____ by

_____Jeffrey L. Neiler_____ & _____Sue Neiger_____

My Commission Expires: 12/7/0 8

This instrument was prepared by CHRIS DAVIES

(Seal)

Notary Public, State of Wisconsin

KIM A. JACOBS
NOTARY
PUBLIC
STATE OF WISCONSIN

# MORTGAGE

752816

DOCUMENT NUMBER

NAME & RETURN ADDRESS
BLACKHAWK COMMUNITY CREDIT UNION

PO BOX 1366, JANESVILLE WI
53547-1366
3900

PARCEL IDENTIFIER NUMBER
FIN5 0004B

Recorded
JAN. 15, 2009 AT 11:55AM
CONNIE J WOOLEVER
REGISTER OF DEEDS
WALWORTH COUNTY, WI
Fee Amount: 139.00
Total Pages 15

————————— [Space Above This Line For Recording Data] —————————

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **January 8th, 2009**
together with all Riders to this document.
(B) "Borrower" is
**Jeffrey L Neiger A Married Person**

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is BLACKHAWK COMMUNITY CREDIT UNION
2640 W. COURT STREET, JANESVILLE WI    53548
Lender is a CREDIT UNION
organized and existing under the laws of the State of WISCONSIN

154589012

WISCONSIN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3050  1/01

Wolters Kluwer Financial Services
VMP®-6(WI) (0805).01
Page 1 of 15                    Initials:_____

EXHIBIT
F
tabbies

Lender's address is **2640 W. COURT STREET,**
**JANESVILLE WI   53548-1366**
Lender is the mortgagee under this Security Instrument.

(D) "**Note**" means the promissory note signed by Borrower and dated **January 8th, 2009**
The Note states that Borrower owes Lender
**One Hundred Fifty Eight Thousand Four Hundred  and 00/100**                   Dollars
(U.S. $**$ 158,400.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **February 1st, 2039**

(E) "**Property**" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "**Escrow Items**" means those items that are described in Section 3.

(L) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

**154589012**

VMP®-6(WI) (0806).01                          Page 2 of 15          Initials: _____          Form 3050  1/01

(P) "Successor In Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (I) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (II) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the COUNTY of Walworth :

[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

LOT 10, BLOCK 14, INLET OAKS SUBDIVISION NO. 5, LOCATED IN THE SE 1/4 OF SECTION 15, T.2N., R.16E., IN THE TOWN OF DELAVAN, WALWORTH COUNTY, WISCONSIN.
THIS IS HOMESTEAD PROPERTY.

which currently has the address of 528 Valencia Dr

[Street]

Delavan    [City], Wisconsin 53115    [Zip Code]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges, Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this 154589012

Initials:_____

VMP®-5(WI) (0506).01          Page 3 of 16          Form 3050  1/01

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payment are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

154589012

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

154589012

VMP ®-6(WI) (0608).01       Page 6 of 16     Initials: _____     Form 3050 1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

154589012

VMP®-6(WI) (0505).01        Page 6 of 16        Initials:_____        Form 3050 1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

   Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

   8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

   9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying Reasonable

154589012

VMP®-6(WI) (0505).01                     Page 7 of 18          Initial:_____          Form 3050  1/01

Attorneys' Fees (as defined in Section 25) to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

154589012

VMP®-6(WI) (0505).01     Page 8 of 18     Initials: _____     Form 3050 1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

154589012

VMP®-6(WI) (0505).01                          Page 9 of 15          Initials_____          Form 3050  1/01

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

154589012

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25), property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

154589012

VMP ®-6(WI) (0805).01

Initials:_____

Page 11 of 15

Form 3050  1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

154589012

VMP ®-6(WI) (0505).01                     Page 12 of 16                     Initials:_____                     Form 3050  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Accelerated Redemption Periods. If the Property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church, or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

25. Attorneys' Fees. If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

154589012

VMP®-6(WI) (0806).01                          Page 13 of 16          Initials: _____          Form 3050   1/01

752P16

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _Jeffrey L. Neiger_____ (Seal)
                                      Jeffrey L. Neiger          -Borrower

_____     _____ (Seal)
                                                                -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                            -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                            -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                            -Borrower

154589012

VMP®-6(WI) (6505).01                    Page 14 of 15                    Form 3050   1/01

758815

STATE OF WISCONSIN, Walworth          County ss:
    The foregoing instrument was acknowledged before me this January 8th, 2009
by Jeffrey L Neiger

My Commission Expires: 6/16/09

_____
Notary Public, State of Wisconsin Chris Collins

This instrument was prepared by
ALLEN D HERBST

BLACKHAWK COMMUNITY CREDIT UNION

154589012

VMP®-6(WI) (0801).01          Page 16 of 16     Initials:_____       Form 3050  1/01

A. Settlement Statement

U.S. Department of H⋯ and Urban Developmen⋯    OMB No. 2502-0265

B. Type of Loan

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | | 154589012 | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME AND ADDRESS OF BORROWER: Jeffrey L Neiger
528 Valencia Dr
Delavan, WI 53115

E. NAME AND ADDRESS OF SELLER:

F. NAME AND ADDRESS OF LENDER:   Blackhawk Community Credit Union
1116 E Geneva Street
Delavan, WI 53115                                              TIN:

G. PROPERTY 528 Valencia Dr
LOCATION: Delavan WI 53115

H. SETTLEMENT AGENT:   Blackhawk Community Credit Union

Phone: (262)728-8686

PLACE OF SETTLEMENT: 1116 E Geneva St
Delavan WI 53115                                              TIN:

I. SETTLEMENT DATE:   01/08/09 / 01/13/09

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: | | 403. | |
| (from line 1400) | 2,450.30 | | |
| 104. Countrywide Home Loans | 126,752.53 | 404. | |
| 105. Countrywide Home Loans | 28,016.98 | 405. | |
| ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | | ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes             to | | 407. County taxes             to | |
| 108. Assessments              to | | 408. Assessments              to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER:** ▶ | 157,219.81 | **420. GROSS AMOUNT DUE TO SELLER:** ▶ | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 158,400.00 | 502. Settlement charges to seller (line 1400) | 0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | | ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes             to | | 511. County taxes             to | |
| 212. Assessments              to | | 512. Assessments              to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER:** ▶ | 158,400.00 | **520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER:** ▶ | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross amount due from borrower  (line 120) | 157,219.81 | 601. Gross amount due to seller  (line 420) | |
| 302. Less amount paid by/for borrower  (line 220) | ( 158,400.00 ) | 602. Less total reductions in amount due seller  (line 520) | ( ) |
| 303. CASH ( FROM ☒ TO ) BORROWER: ▶ | 1,180.19 | 603. CASH ( ☒ TO FROM ) SELLER: | 0.00 |

Previous Edition is Obsolete                                                                 HUD-1 (3-86) - RESPA, HB 4305.2

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained in Blocks E, G, H, and I and on line 401 (or, if line 401 is asterisked, lines 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.
SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).
You are required by law to provide the Settlement Agent (listed in box H) with your correct taxpayer identification number. If you do not provide the Settlement Agent (listed in box H) with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law, and Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

_____
Seller's Signature



HUD-1 (Rev. 3/86)                                                                OMB No. 2502-0265

## L.                                    SETTLEMENT CHARGES

| | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| **700. TOTAL SALES / BROKER'S COMMISSION:** | | |
| BASED ON PRICE $ @ % = | | |
| **DIVISION OF COMMISSION (LINE 700) AS FOLLOWS:** | | |
| 701 $ to | | |
| 702 $ to | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN:** | | |
| 801. Loan origination fee % $158,400.00 to | 594.00 | |
| 802 Loan discount % $158,400.00 to | | |
| 803. Appraisal fee to: Modern Appraisal Services LLC | 275.00 | |
| 804 Credit report to: Informative Research | 18.00 | |
| 805. Lender's inspection fee | | |
| 806. Mortgage insurance application fee to | | |
| 807. Assumption fee | | |
| 808. Future Inspection Fee - Appraisal | | |
| 809. Underwriting Fee | 250.00 | |
| 810 Flood Certification | 13.50 | |
| 811. | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE:** | | |
| 901. Interest from 01/13/09 to 02/01/09 @ $ 21.70 /day | 412.30 | |
| 902. Mortgage insurance premium for mos. to | | |
| 903. Hazard insurance premium for yrs. to | | |
| 904. *Flood Insurance Premium for* yrs. to | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER:** | | |
| 1001. Hazard Insurance months @ $ per month | | |
| 1002. Mortgage insurance months @ $ per month | | |
| 1003. City property taxes months @ $ per month | | |
| 1004. County property taxes 2 months @ $ 280.00 per month | 560.00 | |
| 1005. Annual assessments months @ $ per month | | |
| 1006. *Flood insurance* months @ $ per month | | |
| 1007. months @ $ per month | | |
| 1013 **Aggregate adjustment** | 0.00 | |
| **1100. TITLE CHARGES:** | | |
| 1101. Settlement or closing fee to | | |
| 1102. Abstract or title search to | | |
| 1103. Title examination to | | |
| 1104. Title insurance binder to | | |
| 1105. Document preparation to | | |
| 1106. Notary fees to | | |
| 1107. Attorneys' fees to | | |
| (includes above items Numbers: ) | | |
| 1108. Title insurance to River Title Company | | |
| (includes above items Numbers: ) | | |
| 1109. Lender's coverage $ 158,400.00 | 262.50 | |
| 1110. Owner's coverage $ | | |
| 1111. | | |
| 1112. | | |
| 1113. | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES:** | | |
| 1201. Recording fees: Deed $ ; Mortgage $ 39.00 ; Releases $ 11.00 | 50.00 | |
| 1202. City/county tax / stamps: Deed $ ; Mortgage $ | | |
| 1203. State tax / stamps Deed $ ; Mortgage $ | | |
| 1204. | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES:** | | |
| 1301. Survey to | | |
| 1302. Pest inspection to | | |
| 1303. Overnight Fee to Blackhawk Community Credit Union | 15.00 | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| **1400. TOTAL SETTLEMENT CHARGES** (Enter on line 103, Section J-and line 502, Section K) ▶ | 2,450.30 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrower: _Jeffrey K. Neiger_  Date: 1/8/09   Seller: _____ Date: _____
Jeffrey L Neiger

Borrower: _____ Date: _____   Seller: _____ Date: _____

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

_____ Date: 1/8/9   Settlement Agent: _____ Date: _____

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.    "POC" means cost is Paid Outside of Closing   "PBL" means cost is Paid By Lender

(vmp) -502 (9709).03                              V M P Mortgage Solutions, Inc.                 154589012          PAGE 2

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____

Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☒ Conventional ☐ Other (explain): ☐ FHA ☐ USDA/Rural Housing Service | | Agency Case Number | Lender Case Number 154589012 |
|---|---|---|---|---|

| Amount $ 158,400.00 | Interest Rate 5.00000 % | No. of Months 360 | Amortization Type: ☒ Fixed Rate ☐ Other (explain): ☐ GPM ☐ ARM (type): |
|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) 528 Valencia Dr, Delavan, WI 53115 | No. of Units 1 |
|---|---|

Legal Description of Subject Property (attach description if necessary)

Year Built 1997

| Purpose of Loan | ☐ Purchase ☐ Construction ☒ Refinance ☐ Construction-Permanent | ☐ Other (explain): | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan.**

| Year Acquired 2004 | Original Cost $ | Amount Existing Liens $ 154750.00 | Purpose of Refinance Debt Consolidation | Describe Improvements ☐ made ☐ to be made | Cost: $ |
|---|---|---|---|---|---|

| Title will be held in what Name(s) Jeffrey L Neiger | Manner in which Title will be held A Married Person | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) Jeffrey L Neiger | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number 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 | Home Phone (incl. area code) (262) 245-7760 | DOB (mm/dd/yyyy) 01/31/1967 | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☒ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 2 ages 2, 1 | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 4.00 No. Yrs. 528 Valencia Dr Delavan, WI 53115 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent _____ No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address 528 Valencia Dr Delavan, WI 53115 | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent _____ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent _____ No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer ☐ Self Employed Aqua-Aerobic Systems, Inc Rockford, IL 61130 | Yrs. on this job 0.75 Yrs. employed in this line of work/profession 16 | Name & Address of Employer ☐ Self Employed | Yrs. on this job Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business Electrical Eng | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

154589012

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
Wolters Kluwer Financial Services
VMP®-21N (0507).03
Page 1 of 4          Initials: _____

Case 13-02937-pp    Doc 4-1    Filed 01/21/14    Page 33 of 38

Jeffrey L Neiger

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 5,416.00 | $ | $ 5,416.00 | Rent | $ | ///////// |
| Overtime | | | | First Mortgage (P&I) | | $ 850.33 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | 280.00 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 5,416.00 | $ | $ 5,416.00 | Total | $ | $ 1,130.33 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| | Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| B/C | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed [ ]  Jointly  [x] Not Jointly

| ASSETS  Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| | | Name and address of Company | $ Payment/Months | $ |
| List checking and savings accounts below | | See Attached Addendum | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Associated Bank | | | | |
| 1823 E Geneva St | | | | |
| Delavan, WI 53115 | | Acct. no. | | |
| Acct. no. | $ 2,100.00 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ 2,100.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 198,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 29,200.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | ///////// |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | ///////// |
| | | | | ///////// |
| | | Total Monthly Payments | $ 2,035.00 | ///////// |
| Total Assets a. | $ 229,300.00 | Net Worth (a minus b) ▶ $ 49,883.00 | Total Liabilities b. | $ 179,417.00 |

154589012

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
VMP®-21N (0507).03

Initials: _____

Page 2 of 4

Jeffrey L Neiger

## VI. ASSETS AND LIABILITIES (cont'd)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 528 Valencia Dr Delavan, WI 53115 | sngl | $ 198000 | $ 154739 | $ | $ 1455 | $ | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | $ | $ 198000 | $ 154739 | $ | $ 1455 | $ | $ |

List any **additional** names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| None | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 154740.00 |
| e. Estimated prepaid items | 972.30 |
| f. Estimated closing costs | 1478.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 157190.30 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 158400.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 158400.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -1209.70 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own - - principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home - - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable Federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X Jeffrey L. Neiger | 1/8/09 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | I do not wish to furnish this information. | | CO-BORROWER | I do not wish to furnish this information. | |
|---|---|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino   ☒ Not Hispanic or Latino | | Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino | |
| Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☒ White | | Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White | |
| Sex: | ☐ Female   ☒ Male | | Sex: | ☐ Female   ☐ Male | |

| To be Completed by Interviewer | Interviewer's Name (print or type) Chris Collins | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Interviewer's Signature   Date 1/8/09 | Blackhawk Community Credit Union - Court |
| ☒ Face-to-face interview | | 2640 W Court Street |
| ☐ Mail | | Janesville, WI 53548 |
| ☐ Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | (608) 314-1133 | |

VMP®-21N (0507).03   Page 3 of 4

154589012

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>Jeffrey L Neiger<br>Co-Borrower. | Agency Case Number:<br><br>Lender Case Number:<br>154589012 |
|---|---|---|

Page 1  Addendum To Liabilities  01/06/2009

| Name & Address of Liabilities | Pmt/Mos. | Unpaid Balance | Satisfied |
|---|---|---|---|
| CO:  WI ELECTRIC<br>ADDR:<br>CITY:  ,<br>ACCT. NO.:  69766 | 99.00/ 1 | 99.00 | |
| CO:  HSBC/BSBUY<br>ADDR:<br>CITY:  ,<br>ACCT. NO.:  1696013221457700 | 17.00/ 100 | 1,691.00 | |
| CO:  USAA SAVINGS BANK<br>ADDR:<br>CITY:  ,<br>ACCT. NO.:  5458839013249732 | 112.00/ 69 | 7,700.00 | |
| CO:  COUNTRYWIDE HOME LOANS<br>ADDR:<br>CITY:  ,<br>ACCT. NO.:  83938413 | 1,173.00/ 109 | 126,753.00 | * |
| CO:  COUNTRYWIDE HOME LOANS<br>ADDR:<br>CITY:  ,<br>ACCT. NO.:  152036543 | 282.00/ 100 | 27,986.00 | * |
| CO:  BLACKHAWK CREDIT UN<br>ADDR:<br>CITY:  ,<br>ACCT. NO.:  1535380000 | 281.00/ 44 | 12,218.00 | |
| CO:  HSBC/MNRDS<br>ADDR:<br>CITY:  ,<br>ACCT. NO.:  2266010103662117 | 10.00/ 3 | 27.00 | |
| CO:  DISCOVER FIN SVCS LLC<br>ADDR:<br>CITY:  ,<br>ACCT. NO.:  601100734029 | 61.00/ 49 | 2,943.00 | |
| TOTALS: | 2,035.00 | 179,417.00 | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:<br>X | Date | Co-Borrower's Signature:<br>X | Date |
|---|---|---|---|

154589012



UID: 547d3a86-4796-436b-91dc-
0bed227d5c15
DOCID_00083938413200SN

753167

Recorded
JAN. 22, 2009 AT 10:21AM
CONNIE J WOOLEVER
REGISTER OF DEEDS
WALWORTH COUNTY, WI
Fee Amount:    $11.00
Total Pages 1

## SATISFACTION OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS: Mortgage Electronic
Registration Systems, Inc. , the owner of and holder of a certain
mortgage deed executed by
JEFFREY L NEIGER

to Mortgage Electronic Registration Systems, Inc. bearing date
11/12/2004, recorded in Official Records Book N/A, page N/A,
Document #622890,  in the office of the Register of Deeds Court of
WALWORTH County, State of Wisconsin, securing a certain note
in the principal sum of $133600.00 Dollars, and certain promises
and obligations set forth in said mortgage deed, upon the property
situated in said State and County described as follows, to-wit:

Mail Recorded Satisfaction To:
JEFFREY L NEIGER
528 Valencia Dr
Delavan, WI 53115  11.00

Lot 10, Block 14, Inlet Oaks Subdivision No. 5, located in
the Southeast1/4 of S ection 16, T2N, R16E, Town of
Delavan, Walworth County, Wisconsin.

Tax ID: FIN5 00048

hereby acknowledges full payment and satisfaction of said note and mortgage deed, and surrenders the same as
canceled, and hereby directs the Clerk of the said Circuit Court to cancel the same of record.

IN WITNESS WHEREOF the said corporation has caused these presents
to be executed in its name, by its proper officers thereunto duly authorized,
the 15 day of January, 2009.

Mortgage Electronic Registration Systems, Inc.

By _____
Tracy Duran
Assistant Secretary

Signed and delivered in the presence of:

STATE OF ARIZONA
COUNTY OF MARICOPA

On   1-15-09   , before me, Sharon Haus , Notary Public, personally appeared Tracy Duran , personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed
to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity,
and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted,
executed the instrument.

_____
Sharon Haus, NOTARY PUBLIC
My commission expires 10/13/2009

OFFICIAL SEAL
SHARON HAUS
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Comm. Expires Oct. 13, 2009

Document Prepared By:
Steve V. Galiano
ReconTrust Company
2575 W. Chandler Blvd.
Mail Stop: CHDLR-C-88
Chandler, AZ 85224
(800) 540-2684



EXHIBIT
H

## SATISFACTION OF MORTGAGE

760311

Recording Requested By:
ReconTrust Company
Prepared By: Debora C. Cox
888-603-9011
When recorded mail to:
FA Document Solutions
450 E. Boundary St
Attn: Release Dept.
Chapin, SC 29036

Case Nbr: 6853507    2/13/2009
Ref Number: 152036543
Tax ID:    FIN5 00048
Property Address:
528 VALENCIA DR
DELAVAN, WI 53115
WIB RM          4/10/2009

Recorded
Apr. 14, 2009 AT 11:45AM
CONNIE J WOOLEVER
REGISTER OF DEEDS
WALWORTH COUNTY, WI
Fee Amount:     $11.00
Total Pages 1

MIN #: 1001337-0001811835-9          MERS Phone #: 888-679-6377

Mortgage Electronic Registration Systems, Inc., the present holder of the Mortgage described below, in consideration of full payment and satisfaction of the debt secured thereunder, does hereby reconvey, without warranty, to the person(s) legally entitled thereto all of the estate, title and interest in the Mortgage described below:

Original Lender:      COUNTRYWIDE BANK, N.A. A NATL. ASSN.
Mortgagor(s):         JEFFERY NEIGER
Date of Mortgage:     11/9/2006
Loan Amount:          $30,000.00
Recorded in Walworth County, WI on: 11/17/2006, book N/A, page N/A and instrument number 694024

Property Legal Description:
LOT 10, BLOCK 14, INLET OAKS SUBDIVISION NO. 5, LOCATED IN THE SOUTHEAST 1/4 OF SECTION 15, TOWNSHIP 2 NORTH, RANGE 16 EAST, TOWN OF DELAVAN, WALWORTH COUNTY, WISCONSIN.

IN WITNESS THEREOF, the undersigned has caused this Satisfaction of Mortgage to be executed on 4/10/2009

Mortgage Electronic Registration Systems, Inc.

Witness: Brandy Taylor

By: Debra Shealy, Asst. Vice President

State of SC, County of Lexington

The foregoing instrument was acknowledged before me 4/10/2009 by Debra Shealy, Asst. Vice President of Mortgage Electronic Registration Systems, Inc. on behalf of the corporation.

Notary Public

FRANCES Y. KING
Notary Public
State of South Carolina
My Commission Expires June 21, 2010

